# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NEXTGEN INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NOKIA OF AMERICA CORPORATION, *et al.*, <br> Defendants. | Case No. 2:23-cv-00637-JRG-RSP <br><br> **LEAD CASE** |
| NEXTGEN INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NOKIA OF AMERICA CORPORATION, et al., <br> Defendants. | Case No. 2:22-cv-00309-JRG-RSP <br><br> **MEMBER CASE** |

**NEXTGEN INNOVATIONS, LLC'S MOTION TO DISMISS NOKIA'S BREACH OF CONTRACT COUNTERCLAIMS, FIRST THIRD-PARTY CLAIM, AND TWELFTH AFFIRMATIVE DEFENSE REGARDING INEQUITABLE CONDUCT (DKT. 26)**

**Table of Contents**

I.   INTRODUCTION ............................................................................................................. 1
II.  STATEMENT OF ISSUES TO BE DECIDED ................................................................ 3
III. NOKIA'S COUNTERCLAIMS FOR BREACH OF CONTRACT AND THIRD-PARTY CLAIM SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THEY ARE FACTUALLY AND LEGALLY UNSUPPORTABLE ................................................................. 3
IV.  NOKIA'S INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE SHOULD BE DISMISSED BECAUSE IT IS NOT, AND CANNOT BE, ADEQUATELY PLED ................... 5
V.   CONCLUSION ................................................................................................................. 7

## Table of Authorities

**Cases**

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
　575 F.3d 1312 (Fed. Cir. 2009) .......................................................................................... 5, 7

*Nokia of Am. Corp. v. Oyster Optics, LLC*,
　2:18-CV-00391-JRG, 2021 WL 465428 (E.D. Tex. Feb 9, 2021) ........................................... 3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　649 F.3d 1276 (Fed. Cir. 2011) ............................................................................................... 5

*UltimatePointer, L.L.C. v. LG Elecs., Inc.*,
　No. 2:22-CV-00406-JRG, 2023 WL 5511520 (E.D. Tex. Aug. 25, 2023) ............................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 3

ii

Plaintiff NextGen Innovations, LLC ("NextGen")[1] moves to dismiss (i) the breach of contract counterclaims (First and Second Counterclaims), (ii) the first third-party claim based on the same breach of contract allegations, and (iii) the inequitable conduct defense (the Twelfth Affirmative Defense) in Nokia of America Corporation, Nokia Corporation, and Nokia Solution and Networks OY's (collectively, "Nokia") Answer, Defenses, and Counterclaims under Fed. R. Civ. P. 12(b)(6). Dkt. 26. These claims and defenses lack any plausible legal or factual support, were already known to Nokia as lacking any merit, and are even more flawed now because Nokia makes no suggestion it even complied with the notice provisions of the contract to which it claims it is a third-party beneficiary. Nokia has reasserted and expanded these claims and defenses for improper purposes, and they should be dismissed with prejudice.

I.  **INTRODUCTION**

This Motion raises issues identical to those already fully briefed with respect to Nokia's amended answer that carried over from the *Fujitsu* case. Dkt. 16 (the parties' agreed carryover materials includes the pending "NextGen's Motion to Dismiss The Nokia Defendants' Breach of Contract Counterclaims and Twelfth Affirmative Defense Regarding Inequitable Conduct (Case No. 2:22-cv-003007, Dkts. 171, 175, 184, 189)"). The *Fujitsu* motion and reply explains in detail how Nokia's previous breach of contract claims and inequitable conduct defense are factually and legally defective, and should therefore be dismissed with prejudice. Nokia's new claims are even more deficient.

---

[1] Third-party Defendants Walter Soto and Alexander Soto (the "Soto Brothers") have not yet been served with a copy of Nokia's third-party claim. Assuming the claim will be served, the Soto Brothers join in this Motion. The Soto Brothers reserve their right to file a further motion to dismiss regarding other issues on or before their deadline to answer or respond to Nokia's third-party claim.

1

Nokia's assertion of these same defenses now further highlights their lack of merit. As NextGen previously explained, Nokia's breach of contract counterclaims are fatally deficient because Nokia is not a third-party beneficiary to the Coherent agreement and, even if it were, claiming attorneys' fees as damages has no support in the law. Nokia's new allegations have fixed none of these issues (because they are unsalvageable). For example, Nokia has failed to identify a single Nokia product accused in this new case that is purportedly covered by the Coherent agreement. And, despite the notice and cure provisions of the Coherent agreement, the first notice NextGen received of a purported breach is Nokia's Answer. Nokia did not even email or call NextGen, like it did in the *Fujitsu* case, to determine whether Coherent-sourced products are accused of infringement. Had Nokia exerted even this minimal effort, it would have learned (like it did in the *Fujitsu* case) that Coherent-sourced products that licensed and released by the Coherent agreement are not accused. Although Nokia has been aware that Coherent licensed and released products are not accused (*see* Ex. 1), Nokia has refused to withdraw its claims, instead making the counterfactual argument that NextGen intentionally accused Nokia's Coherent-sourced products. *Id.*

Nokia's inequitable conduct defense fares no better. For the first basis of its defense, a purported withholding of prior art, Nokia does not allege the required intent at all. In addition, Nokia's allegations about materiality are directly contrary to the Examiner's reasons for allowance. Nokia provides no allegations, because it cannot, that disclosure of the purportedly withheld prior art would have changed the Examiner's determinations. Similarly, Nokia's second basis is grounded in a mistake regarding entity status, meaning the inventors' issuance fee payment was undercharged. Nokia does and cannot allege that this minor fee issue (which is in the process of being corrected) is but-for material to the issuance of the patents because it is not.

Accordingly, Nokia's breach of contract-related claims, as well as its inequitable conduct defense, should be dismissed with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED

A. Should Nokia's First and Second Counterclaims, and its First Third-Party Claim, all of which are related to the same purported breach of contract, be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure?

B. Should Nokia's Twelfth Affirmative Defense for "Inequitable Conduct" be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure?

## III. NOKIA'S COUNTERCLAIMS FOR BREACH OF CONTRACT AND THIRD-PARTY CLAIM SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THEY ARE FACTUALLY AND LEGALLY UNSUPPORTABLE

NextGen discussed the relevant law, facts, and arguments in its first motion to dismiss. *E.g.*, Case No. 2:22-cv-003007, Dkt. 171 at 2-16. The same Coherent agreement discussed in the previous motion is at issue here, and Nokia makes the same allegations. Nokia's new counterclaims and third-party claim are based on the same agreement to which Nokia is not a third party under applicable law. Case No. 2:22-cv-003007, Dkt. 171 at 2-10 (citing case law, such as *Nokia of Am. Corp. v. Oyster Optics, LLC,* 2:18-CV-00391-JRG, 2021 WL 465428 (E.D. Tex. Feb 9, 2021), and relevant facts demonstrating the lack of basis for Nokia's argument). And Nokia's claims are based on the same legally incognizable damages allegations for attorneys' fees and speculative purported damages. *See* Case No. 2:22-cv-003007, Dkt. 171 at 10-14; *see also* Dkt. 26 at Counterclaims, ¶¶ 43, 56.

Nokia's counterclaims have even less factual basis than in *Fujitsu* because in this current case, Nokia does not even pretend to have complied with the notice provisions in the Coherent agreement to which it claims to be a third-party beneficiary. While, in *Fujitsu*, Nokia emailed NextGen about the purported breach a few days before filing its counterclaims, Nokia took no such

3

action here. Indeed, there is not even any evidence that any of the products accused in the new complaint are actually covered by the Coherent agreement. The Answer does not identify any such products, instead referring vaguely to unidentified "accused Coherent-supplied products." *E.g.*, Dkt. 26 at ¶ 28. Even in its Second Counterclaim seeking a declaratory judgement, Nokia only vaguely refers to unidentified "Coherent-supplied products" without identifying which (if any) of Nokia's products are "Coherent-supplied." *Id.* at ¶¶ 45-47. Nokia has not served any discovery and, as Nokia itself argued to the Court, the accused products here are different than those in the *Fujitsu* case. *See, e.g.*, Dkt. 27 at 3 (this case relates to "to materially different technology and accuse an entirely new range of products not at issue in *NextGen I*"). Nokia has not even plead sufficient facts such that the Court can determine whether Nokia has sufficient basis to bring a declaratory judgment or is seeking an advisory opinion.

Not only is Nokia's failure to take even minimal measures to provide notice contrary to the Coherent agreement (*see* Case No. 2:22-cv-003007, Dkt. 171 at 14-16), it demonstrates the fact that any "damage" to Nokia is a result of its rush to bring its counterclaims rather than any purported breach of contract. Moreover, just like in the *Fujitsu* case, NextGen has confirmed that licensed and released Coherent-sourced products are not accused. Ex. 1. Nokia simply seeks to baselessly inflate and multiply its purported damages by forcing, at the very least, the briefing of this Motion.

Finally, with respect to the First Third-Party Claim brought by Nokia, it should be dismissed because it is based in the same faulty breach of contract allegations as those brought against NextGen. *See* Dkt. 26 at Counterclaims, ¶¶ 54-56. The inclusion of this claim is indicative of Nokia's general approach to these issues. It does not seek to bring viable claims for relief.

4

Rather, it is an attempt to expand the scope of discovery to increase the burden on NextGen and its owners.

Because Nokia cannot plead sufficient facts to supports it counterclaims and third party claim, the claims should be dismissed with prejudice.

IV.     **NOKIA'S INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE SHOULD BE DISMISSED BECAUSE IT IS NOT, AND CANNOT BE, ADEQUATELY PLED**

Like its unsustainable breach of contract allegations, Nokia's new inequitable conduct defense should be dismissed with prejudice for the same reasons as previously briefed. *E.g.*, Case No. 2:22-cv-003007, Dkt. 171 at 16-20 (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (*en banc*) and *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009)).

The first basis of Nokia's new inequitable conduct allegations is that the inventors purportedly did not submit multiple references to the PTO during the prosecution of the '802 patent. Dkt. 26 at ¶¶ 22-30. Nokia makes no allegation regarding intent with respect to this purported failure of disclosure, meaning these allegations are deficient on their face under *Therasense* and *Exergen*.

Nokia's first basis also should fail because, like its previous allegation against Walter Soto addressed in the first motion, which is very similar, Nokia cannot allege materiality. According to Nokia, the purportedly withheld prior art is relevant to "dynamic scheduling of upstream and downstream transmission timeslots," and "frame structures and slots for data transmission" that are disclosed in certain dependent claims of the '802 patent. Dkt. 26 at ¶¶ 27-29. However, none of these ***dependent*** limitations formed the basis for allowance. Rather, the PTO allowed the ***independent*** claims over the prior art because the prior art failed to disclose:

> a Local Area Network (LAN) Manager for a local area passive optical network whereby the local area passive optical network is disposed to include a plurality of

5

> LAN clients, the LAN Manager comprising: an optical interface to convert a downstream electrical signal to emit a downstream optical signal on a downstream wavelength, and the optical interface can receive an upstream optical signal on an upstream wavelength and convert to an upstream electrical signal, and wherein the optical interface is disposed to couple to an optical fiber; a control module for managing the optical signals, wherein the control module is electrically coupled to the optical interface, and wherein the control module includes sending downstream control and data information in the downstream electrical signal, and wherein the downstream control information includes an upstream bandwidth allocation information for one or more LAN clients, and wherein the control module receives the upstream electrical signal that includes upstream control and data information; an OSI Layer 2 switch device for switching data according to an OSI Layer 2 protocol, and wherein the OSI Layer 2 switch device is electrically coupled to the control module; and an uplink port interface electrically coupled to the OSI Layer 2 switch device, whereby the LAN manager is disposed to receive upstream data from a first LAN client and switch the upstream data to a second LAN client in the downstream, and the LAN manager is disposed to receive an uplink data from the uplink port interface and switch the uplink data to one or more LAN clients in the downstream.

Ex. 2 at PDF pg. 31-32.[2] The dependent claims cited by Nokia were allowed because of limitations of the independent claims, not the purported limitations of "dynamic scheduling of upstream and downstream transmission timeslots," and "frame structures and slots for data transmission" Nokia alleges are found only in the dependent claims. Nokia's only allegations about why the allegedly withheld prior art is material is its conclusion (Dkt. 26 at ¶ 22) and the allegations (without pin cites) that some dependent claim limitations are disclosed in the purported prior art (*id.* at ¶¶ 27-29). This is not sufficient. *See Exergen*, 575 F.3d at 1329-30 (requiring explanation of "why" the allegedly withheld prior art is but-for material and not cumulative). And, in light of the Examiner's reasons for allowance, Nokia cannot plead a basis for its defense, and it should be dismissed with prejudice.

---

[2] The Court should take judicial notice of the file history because it is publicly available and can accurately and readily be determined by looking to the PTO's records, which is a source whose accuracy cannot be reasonably questioned. *UltimatePointer, L.L.C. v. LG Elecs., Inc.*, No. 2:22-CV-00406-JRG, 2023 WL 5511520, at *2 (E.D. Tex. Aug. 25, 2023) (taking judicial notice of "patent prosecution histories").

Nokia's second basis for its inequitable conduct defense is that the inventors purportedly improperly claimed "small entity" status for the issuance fees for the '432 and '247 patents. Dkt. 26 at ¶¶ 31-35. Nokia makes no allegation that this mistake was material to the issuance of the patents such that they would not have been issued if the Soto brothers had claimed "large entity" status. *See Exergen*, 575 F.3d at 1329-30. Nokia makes no such allegation because it cannot. The entity status is used in calculating fees, not issuance decisions.[3] Nokia cannot plead facts demonstrating that a mistake in entity status was the but-for cause of issuance, and Nokia's second basis for its inequitable conduct defense should therefore fail.

Because Nokia has not and cannot adequately plead inequitable conduct, this defense should be dismissed with prejudice.

**V.  CONCLUSION**

For the foregoing reasons, the Court should dismiss, with prejudice, Nokia's counterclaims, third-party claim, and its twelfth affirmative defense for inequitable conduct.

Dated: July 3, 2024                    Respectfully submitted,

*/s/ Benjamin T. Wang*
Benjamin T. Wang

Benjamin T. Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Irene Y. Lee
CA State Bar No. 213625
Email: ilee@raklaw.com
Andrew D. Weiss
CA State Bar No. 232974
Email: aweiss@raklaw.com

---

[3] The Soto brothers are currently in the process of correcting their entity size status with the PTO, and will pay the appropriate fees. These facts also vitiate Nokia's information and belief allegation of intent. *See* Dkt. 26 at ¶ 35.

Paul A. Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Claire Abernathy Henry
Texas State Bar No. 24053063
Email: claire@wsfirm.com
Andrea L. Fair
Texas State Bar No. 24078488
Email: andrea@wsfirm.com
Chad Everingham
Texas State Bar No. 00787447
Email: ce@wsfirm.com
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

Attorneys for Plaintiff *NextGen Innovations, LLC* and Third-Party Defendants *Walter Soto* and *Alexander Soto*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document is being served through CM/ECF on July 3, 2024.

/s/ *Benjamin T. Wang*
Benjamin T. Wang